BRAINARD and others *v.* STEAMER NARRAGANSETT.

*(District Court, D. Connecticut. July 22, 1880.)*

1. COLLISION — LIGHTED TORCH — REV. ST. § 4234.—The showing of a lighted torch by a sailing vessel, upon the approach of a steam vessel during the night, required by section 4234 of the Revised Statutes, is not confined merely to those cases where the steam vessel is approaching a sailing vessel from astern.

*Samuel L. Warner,* for libellants.

*Thomas M. Waller* and *Nathan F. Dixon,* for claimants.

SHIPMAN, D. J.   This is a libel *in rem* to recover damages sustained by the schooner Silas Brainard, by a collision with the steamer Narragansett, in Long Island sound, on the morning of October 11, 1877.

The schooner Silas Brainard left South Amboy on the afternoon of October 10, 1877, with a cargo, bound for Middletown, Connecticut, and about half-past 3 o'clock on the next morning, at a point in Long Island sound nearly opposite Lloyd's Neck, about 20 miles easterly of Throgg's Neck, and about one-third the distance from Long Island to the Connecticut shore, collided with the steamer Narragansett, on her way from Stonington, Connecticut, to New York city. The schooner suffered serious damage.

The story of the schooner, as contained in the libel, is as follows:   At the time of the collision the tide was on the ebb, the wind was blowing a slight breeze from the north by west, and the course of the schooner was north-east, or nearly so. She was properly lighted, and all of her lights were brightly burning. The mate, who was then in command, and the lookout saw the steamer coming up the sound, under a full head of steam, with the evident intention of passing on the starboard of the schooner, who kept on her course. The steamer was run foul of the schooner, striking her bowsprit and flying jib-boom; the wheel of the steamer struck upon the schooner's starboard quarter, and by the force of the blow the mainmast, the main and fore-rigging were broken, the rail, the bulwarks, stanchions, and a large part of the plank

shear were destroyed, and the deck was damaged. If, at the time when it was apparent to the master of the steamer that a collision was inevitable, her speed had been checked and her engines reversed to the extent of their ability, the violence of the collision would have been greatly lessened, and the damage would have been slight; but her engines were not reversed, and on the contrary were kept in motion after the collision.

The theory of the steam-boat is that at the time of the collision the wind was blowing moderately from the west northwest, the weather was threatening and it was dark, but there was no difficulty in seeing lights which were properly set and burning. The persons in command of the boat while she was heading about west south-west saw, by the aid of glasses, a dim, colorless light, not visible to the naked eye, about two points off her port bow, which was supposed to be the binnacle light of a vessel sailing westward, and that this was the only visible light at that time. Immediately upon this discovery the course of the steamer was changed about two points to the northward, and at the same time the engine was slowed. Instantly the reflection of the steamer's head-light was seen upon the sails of a vessel heading about north north-west, and lying in the wind, or nearly so. At this time the schooner's men were reefing. The steamer's helm was forthwith put hard a-port, and the engines were reversed and backed, and all means taken to avoid a collision. While the steamer was headed about west, half north, the bluff of the schooner's starboard bow struck the port guard of the steamer between the capstan and the pilot-house. The schooner swung alongside of the steamer, and in this movement several of the arms of the port wheel of the steamer were broken. The claimants also allege that no lighted torch was shown by the schooner to the approaching steamer, and that if one had been shown the collision would not have occurred, and deny that the schooner's lights were properly burning.

The facts which are found to have been proved are as follows: The wind was about west north-west. Shortly before the collision the schooner had been reefed. For a few min-

utes before the collision the mate at her wheel and the look-out at her bow saw the steamer approaching with all lights visible. The mate became alarmed lest the steamer should strike the schooner, and called the captain, who was lying in his berth with his clothes on, and who came on deck immediately. The steamer's course had been west by south, one-quarter south. After the captain came on deck, which was about a minute before the collision, the steamer changed her course to the northward and shut out from the schooner her green light. When the collision took place the starboard bluff of the schooner's bow struck the steamer on her port bow. At the time of the collision the steamer was headed westward of north. The schooner swung around, and the wheel of the steamer must have traversed nearly the length of the deck of the schooner, inflicting great damage.

The lights of the schooner were properly set, and were burning. There was nothing in the condition of the atmosphere to prevent the steamer seeing the schooner's lights. The captain and lookout of the steamer were on the watch for lights, were careful and vigilant, and were in the exercise of due diligence, and did not see the schooner's red or green lights until the time hereinafter mentioned; and, if they had been visible, these persons would have seen them. The schooner's lights were not seen by the steamer State of New York, which was 500 or 600 feet away from the Narragansett at the collision—the State of New York's port bow being upon the Narragansett's starboard quarter.

The captain of the Narragansett, prior to the collision, was scanning the sound, by the aid of glasses on the lookout, for lights, and saw a dim, colorless light about two points off her port bow, which he supposed to be the binnacle light of a vessel sailing to the westward. He immediately rung to slow down, and ordered the wheelsman to port his wheel. This was done, and carried the steamer to the northward of her former course. In a few seconds the head-light of the steamer shown upon the sails of the schooner. The captain of the steamer ordered the wheel hard a-port, and the engine to stop, to back, and to back strong. These signals were given

in rapid succession, and were obeyed. About a minute elapsed between°the first sight of the dim light and the collision. Just before the collision, and after the captain had given the order to port the wheel, the wheelsman, who had seen the colorless light, saw a light again, and thought and told the captain that it was a green light.

A question in dispute between the parties is as to the course of the schooner. I am of opinion, in opposition to the testimony of her officers, that she was not upon a northeast course. The steamer's course was west by south, one-quarter south. The schooner's lights were properly set and were burning, and yet they were not visible to the steamer. In addition, the preponderance of the testimony is that the bluff of the schooner's starboard bow struck the steamer on her port bow. This is the way in which the collision is represented on the diagrams attached to the testimony of the schooner's officers before the United States inspectors, upon their investigation of the cause of the collision. It is true that these deponents testify, in substance, that they did not see these diagrams, and that they were not attached to the depositions at the time of deponents' signature, and that the only diagram which they saw was a large diagram or chart upon the table. Admitting that to be true, these deponents must have testified, by reference to the large chart, in regard to the respective positions of the vessels at the time of the collision, which testimony the inspectors endeavored to reproduce accurately upon the small paper diagrams attached to the depositions. If the collision occurred in ·this manner, and the schooner was on a north-east course, the course of the steamer at the time of the collision must have been north or nearly so; and so the steamer's officers testified before the inspectors. The captain testified that the steamer's course must have been north-east to north north-east, as the schooner's course was north-east. The mate said the steamer was heading about north at the time of the collision. The lookout said, "If our schooner was on a north-east course, the course of the steamer could not have been to the westward of north when we came together." It can hardly be possible that the

steamer's course had changed during the minute before the collision from west by south to north. She had turned north-ward, but she was not headed north.

The schooner must have been headed north-west, or there-abouts; but it is difficult for me to find satisfactorily why her green light should not have been visible to the steamer some minutes before the collision, when she was upon her west by south course. The theory of the steamer is that the schooner was being reefed immediately before the collision, and at the time when the colorless light was seen, and that, at the in-stant of the collision, she had changed her course and was headed north north-west. In my opinion the reefing took place at a considerably shorter time before the collision than the schooner's officers now think, and that the men had only just gone below, after reefing, when the mate and lookout became alarmed at the approaching steamer, and that a less time than these witnesses now think elapsed between the time when the steamer was first seen and the collision, but that the reefing had been completed. There is no evidence which satisfies my mind that the schooner changed her course to north-west at the instant of the collision. Without undertaking to find affirmatively why the lights were not visible, I find simply that the steamer was in the exercise of due diligence, and that the lights were not capable of being seen. For this fact I rely much upon the appearance and manner of Captain Walden, which impressed me favorably; upon the fact that he was for several hours continuously be-fore the collision in the pilot-house, in attendance upon his duty; that it was his business and duty to look out for lights; that there was no inducement to be negligent, but that there was every motive to be careful; and upon the further fact that it is plain to my mind that the schooner was not upon a north-east course, and that the steamer's theory is right in this respect, and that the schooner's witnesses are mistaken. It is sufficient to find that the collision did not occur through the negligence of the steamer.

The schooner had a torch which was ready for use, and

which was kept in a convenient place in the cabin. The mate had been recently employed, and did not know that there was a torch on board. It was not used. There was time enough to have lighted and shown it to the advancing steamer after the mate saw the approaching danger. If it had been shown the collision might have been avoided. The captain and mate were both of opinion, and this they state is the prevailent opinion and practice of the officers of coasting vessels, that a torch is to be used only when a steamer is approaching a sailing vessel from astern.

This construction of section 4234 of the Revised Statutes is not warranted by its language, and is not recognized in the decisions upon the subject. Judge Lowell says: "I suppose the new regulation in the act of 1871 was intended to give an additional warning to steamers, in case of need, and one the use or neglect of which could not well be disputed, so that if the red and green lights were not lighted, or were dim, or were overlooked, there should be still another means of calling attention to the sailing vessel." *The Leopard,* 2 Lowell, 238; *The Titian,* 6 Ben. 346.

The conclusion is that the collision was not due to the negligence of the steamer, and that the statutory precautions to avoid a collision were not taken by the schooner, and the libellants have not sustained the burden of showing that this neglect did not materially contribute to cause the collision.

The libel is dismissed.

NOTE.—See *Kennedy* v. *Steamer Sarmation,* 2 FED. REP. 911.